## COLEBROOK *v.* MERRILL.

Where there is a written contract between the parties, it is for the court to give construction to that contract, if it become necessary, but it is for the jury to find whether the acts done, which constitute the basis of the present action, were done under that contract, or some other which was not written.

In actions of review the statute has placed the whole subject of amending the pleadings and of admitting new pleadings, entirely within the discretion of the court.

In the trial of an action upon review, the court may, in its discretion reject or disallow a demurrer to the original declaration.

TROVER, by Colebrook against Sherburn R. Merrill, in review for "certain bank bills representing in all one hundred and fifty dollars

and of the value of one hundred and fifty dollars. At this term the defendant filed a demurrer to the declaration, assigning as cause of demurrer that, the description of the bills is insufficient; which the court, in its discretion, refused to receive, and the defendant excepted. At a town meeting held in the plaintiff town on the 9th day of August, 1862, the plaintiff and defendant made the written contract, following, to wit:

"For a valuable consideration, I, Sherburn R. Merrill, hereby covenant and agree to and with the selectmen of the town of Colebrook to furnish said town the sum of three thousand four hundred dollars, upon the demand of said selectmen at the rate of six per cent. interest,—(that is,) six dollars for the use of one hundred dollars for a year; and we, the selectmen of said town, hereby agree to take the money required by the town, under the votes this day passed, of said Merrill, and to pay him six per cent. interest for the same. And it is hereby provided that said money shall be called for and furnished in sums not less than five hundred dollars at a time. And it is understood and agreed that said Merrill shall not be required, in any case, to furnish specie under the above agreement.                                                    S. R. MERRILL."

Colebrook, August 9th, 1862.

HENRY E. WIGGIN, } *Selectmen of Colebrook.*
SIMEON CROSS,      }

On the evening of said day, the selectmen and the defendant had some conversation as to when the money would be wanted, and the defendant was told that it would be wanted soon. Defendant testi-· fied that, thereupon he at once commenced his arrangements for furnishing the same; that he got a copy of the proceedings of said meeting that night, and sent to the Great Falls Bank with a request to furnish some money and went about the town and vicinity looking for money to meet the contract. On the 26th of the same August, the selectmen, on the defendant's request, met him at his store, and, after some preliminary talk as to the amount of money it was necessary to raise, fixed upon the sum of $3,100, and made six notes, one for $500; two for $300 each; one for $150, payable to the defendant, or bearer; one for $300, payable to one Young and one for $1,600, payable to the Great Falls Bank, all being on six months time, and signed by the selectmen in behalf of the town of Colebrook. The defendant wished to have said notes made for the aforesaid amounts so as to distribute them for his convenience and raise the money from various sources. Defendant's evidence tended to prove that defendant wanted the selectmen to sign said bank-note individually as sureties, in addition to their signatures as selectmen; that they refused to do so, and that defendant then told them he would send the note to the bank as it was without their individual signatures, if they wanted he should, and if the money came they would get it, if not they would not get it, but he did not think the

bank would send the money; that they thereupon told him to send on the note and if the money did not come they would get it somewhere else.    There was also evidence tending to prove that defendant, during this conversation, said:    "This paying bounties is new business, nobody knows how it will come out, and I have risked all I am going to in that way."    Defendant testified that he took this note the same as the other notes, claiming nothing other or different in regard to it than he did as to them.    Defendant sent the note to the bank and the money came on it.

Plaintiff's evidence tended to prove that the defendant asked the selectmen if he might exchange said money for the benefit of the bank, and that they consented to the exchange.    Defendant denied that he asked such permission of them, but said he told the selectmen when they first met that he was in the habit of exchanging money for G. F. bank, and did exchange their money, for their advantage, and should exchange all sent to him.    On the 9th day of September, the defendant, having received the money from the bank and having exchanged a part of it, paid over to one of the selectmen $850 on the bank note.    A few days after this, the defendant met another of the selectmen and paid over the balance of the money received from the bank as was then supposed by them both, but it was in this last payment that plaintiff claimed, and his evidence tended to show there was a mistake, and that the defendant did not pay over the balance of the money in his hands received on the bank note in to $150.

On the facts appearing in the case, the defendant claimed

1st. That the construction of the contract was for the court and not for the jury; 2d. That the property to said money was in him; 3d. That if the parties, in what they did, acted under said contract, each doing and receiving what was done as a compliance with each other's obligation, then they are estopped from saying the contrary now, whether the same were strictly their legal obligations or not.

The court instructed the jury in substance as follows: That there were two questions for them to determine.

1st. Did the defendant pay over to the selectmen all the money obtained on the bank note, or $150 less.    If he paid it all over, then the defendant was entitled to a verdict, if not—2d. Were the bills received by him from the bank, and in exchange for those received from the bank, the property of the town wholly and absolutely; that if the jury found both of these questions in favor of the plaintiff, their verdict should be for the town, otherwise for the defendant.    In the course of the charge, the court remarked that the agreement required the defendant to raise the money.    Did he do it?    It was for the jury to find upon all the evidence whether or not in obtaining the money from the bank, the defendant was acting under and in performance of the contract, or merely as the servant and agent of the town; that upon this question they might consider the fact that he did not become himself liable upon the town note, as indorser or otherwise.    Was a new arrangement made at the time defendant sent

·the note to the bank, or did the parties understand they were acting under the written contract.

The jury must look at the evidence and see whether they did so act; whether the defendant did anything more than act as the agent of the town, and whether the town did not stand behind him in all this matter; whether the defendant could afford to do anything more than that for the six per cent., or if he could not, whether he might not have been actuated by motives of patriotism. To which instructions the defendant excepted. Verdict for plaintiff.

The questions arising on the case were reserved.

*Barker, Bingham and Shurtleff,* for defendant.

I. A demurrer is a perfect answer in law, and the issue is to be tired by the court. Tidds Practice chap. 31 page 665.

It is defined to be a declaration by a party that he will go no farther, because the other party has not shown sufficient matter against him that he is bound to answer, Chittys Pl. Vol. 1, page 661. The court will nonsuit a party at any stage of the proceedings when it appears from the papers on the evidence that he has no case. A demurrer is as full an answer as the general issue in law and the other in fact.

Hence in our practice a demurrer like the general issue may be filed at any time as a matter of right. The refusal of the court to receive the demurrer is cause for a new trial.

*Weatherfod* v. *Wilson,* 2 Scam. 253 ; *Rohr* v. *Davis,* 9 Leigh. 30 ; *Furnis* v. *Ellis,* 2 Brock. 14 ; *Nye* v. *Wright,* 2 Scam. 222 ; U. S. D. Vol. 5, page 553 No. 740, *Ibid.* p. 554 No's 754, 756, 757, *Ibid.* p. 555 No's 794, 796 and 805.

II. The questions raised in the present case are entirely different from those decided in the case reported in 46 N. H. 160. The written· contract was not used on that trial and does not appear by the reported case to have been mentioned in the case as reported, it was entirely proper that the jury should find that the understanding and agreement was between the parties. *Wason* v. *Rowe,* 16 Vt. 528–9.

But in the case at bar the contract appears in writing clear, clean, and unambiguous, and the construction of it was purely a question for the court. The court erred in not granting the defendant's first claim or request, and in submitting the question to the jury as it did in the second division of its charge as follows, viz.: "Were the bills received by him from the bank and in exchange for those received from the bank the property of the town wholly and absolutely?"

This was the same charge given by the court in the reported case where the contract appeared in parol.

The error is manifest. The contract, now appearing in writing, it was a question of law. By it the money or bills were either the plaintiff's or defendant's, and it was for the court, and not the jury, to say which. *Prescott* v. *Hayes,* 43 N. H. 596 ; *Towle* v. *Bigelow,* 10 Mass. 384 ; *Wason* v. *Rowe,* 16 Vt. before cited.

III. The defendant insists upon his second request that under the contract the property in the bills sued for was, and was to be, in the defendant till they should be delivered to the plaintiff on his demand.

IV. There was no evidence in the case showing, or tending to show an abandonment of the written contract, and we insist that our third position is correct as matter of law.

SARGENT, J.    The first position of the defendant, taken at the trial, was undoubtedly correct, that the construction of the written contract was for the court and not for the jury.    But as neither the court nor the jury were called upon to construe it, there being no dispute or doubt about its construction anywhere, that position seems to have no bearing upon the decision of this case.

Defendant's second position assumes the whole case,—assumes all the facts to be found by the jury as he would desire to have them, viz., that this merely was obtained by defendant for the town under the written contract.    This was a fact which the court could not assume, but which must be found by the jury, and the defendant's misfortune is, that the jury have found this fact the other way, that this money was obtained by defendant as agent of the town, and not for himself to be bound to the town under the contract, that in obtaining this money of the Great Falls Bank, neither the plaintiff nor defendant understood that he was acting under the special contract in writing, but under some new arrangement made at the time.

The jury having settled that fact in that way, renders the third position of defendant entirely inapplicable to the case.

We see no reason why the instructions given were not entirely correct.    It is admitted in argument that the same instructions substantially were correct on the former trial, but it is said that this was because there was no proof of any written contract on the former trial, and that such proof having been introduced on the last trial, the rulings should have been different.    But the jury have found here that this money was not furnished under the written contract, and it is difficult to see why it was not proper to leave it to the jury to say, under what contract it was furnished the same as was done upon the former trial, and the jury have found that this money was while in the hands of the defendant, the money of the town and not the defendant's money, as they did on the former trial.

Had the defendant the *right* to file his demurrer in this case, as he claims, or was it a matter entirely within the discretion of the court?

As judgment was rendered on the verdict returned at the first trial, this must of course be a review of that action, and such we have ascertained to be the fact; though it is not disclosed in the case or in the arguments.    This being the fact, the authorities cited by defendant, tending to show the rights of parties in that regard, in ordinary cases and in original actions, have little to do with the question, because we find that after verdict and judgment, the rights

of the parties on review depend entirely upon the provisions of the statute.

By the Compiled Statutes p. 494, sec. 8, it is provided that the party bringing a review shall produce in court copies of the writ, pleadings, judgment and all papers used on the former trial. Sec. 9 provides that the review shall be tried just as though no judgment had been rendered, while sec. 7 provides that actions of review shall be tried upon the pleadings, filed in the original action if any, unless the court upon such terms as they think reasonable shall permit amendments to be made.

The General Statutes have similar provisions, except, instead of the party reviewing being required to furnish copies as before, no copies are now required, as both trials are now to be had in the same court; the review may now be tried upon the original papers already on file, without the necessity of copies, and in the General Statutes special provision is made that upon such review or new trial amendments of the writ, pleadings, or other process, may be allowed on such terms as the court deems just. ·

The law was formerly different. In the statute of 1791, regulating trials in civil causes, there was a provision for a review; but it was expressly enacted in N. H. Laws (1815) 103, that " such action (of review) shall be tried on the pleas made upon the former trial upon record."

In the act of June 24, 1813, constituting the supreme judicial court, N. H. Laws (1815) 76, there was a similar provision.

But in the act of June 2, 1829, regulating process and trials in civil causes, after providing generally for a review, there are several special provisions, one of which is, " that in any action of review pending in any court in this state, the justices thereof shall have power to order any amendment of the original writ, record or proceedings in any part thereof, upon such terms and conditions as they may consider just and reasonable."

And since that time, some similar provision has been retained in all the statutes providing for reviews.

The right of review is granted and regulated by the statute, and the subject of amendments and the admission of new pleas, since any have been allowed at all, is left entirely in the discretion of the court. *Burleigh* v. *Burleigh,* 6 N. H. 204; *Avery* v. *Holmes,* 10 N. H. 574; *Knox* v. *Knox,* 12 N. H. 357; *Otis* v. *Currier,* 17 N. H. 463; *Johnson* v. *Railroad,* 43 N. H. 410.

In this case, the court exercised its discretion in disallowing the demurrer of the defendant. It was a discretion clearly vested in the court, and the court having exercised it, has reserved no question here, as to its *proper* exercise.

But we think it was a very proper exercise of discretion under the circumstances of this case.

In the former opinion, the court simply settled, that if the description of the money was not quite sufficient, still that defect was cured by the verdict. The soundness of that position cannot be

doubted, but regarded in the light of more recent decisions of this court, it may be doubtful, whether if the demurrer had been received, it must not have been overruled on the ground that the description of the money in this case, under all the circumstances, was not sufficient.    But is not important to settle that question here ?

*Judgment on the verdict.*